**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JONATHAN D. OWENS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )  **Case No. 04-CV-668-TCK-PJC** |
| | ) |
| **CITY OF HOMINY, and** | ) |
| **MASON GOODE, in his official** | ) |
| **capacity,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Before the Court are the Motion for Summary Judgment of Defendant City of Hominy (Docket No. 23) and the Motion for Summary Judgment of Defendant Mason Goode (Docket No. 25).

**I.   Factual Background**

Plaintiff Jonathan Owens ("Plaintiff") is a citizen of Hominy, Oklahoma.  Plaintiff brings three substantive causes of action against Defendant the City of Hominy (the "City") and Defendant Mason Goode ("Goode"):  (1) violation of 42 U.S.C. § 1983 ("§ 1983") ; (2) false imprisonment; and (3) malicious prosecution.  Goode was the Chief of Police of the City of Hominy at all relevant times.[1]  Plaintiff's claims arise out of the following events.[2]

---

[1]  As noted by Goode in his reply brief, it is not clear whether Goode is sued only in an official capacity or also in an individual capacity.  The caption of the Complaint states that Goode is sued in his official capacity.  However, Paragraph 23 of Plaintiff's Complaint states that "[t]he actions of Goode, of the arresting officer on November 22, 2002, and other officers . . . . of the City of Hominy alleged herein deprived Owens of [his] civil rights."  (Compl. ¶ 23.)  Goode filed a separate motion for summary judgment, raising arguments and defenses that would go to his individual liability.  Thus, the briefing before the Court indicates that Plaintiff attempts

1

A.      Plaintiff's Reporting of September 3, 2001 Incident Between Plaintiff and Crawford

On September 3, 2001, which was Labor Day, Plaintiff admits to having slightly less than one full can of beer at approximately 1:00 p.m.  Plaintiff then left home in his truck to run errands around town.  After Plaintiff washed his truck and was driving around town, another vehicle ran a stop sign pulling into the path of Plaintiff's vehicle and causing him to swerve into the lane of oncoming traffic.  Plaintiff felt that the other driver "owed [him] an apology" and  therefore "went around the block" to find the other driver.  (Deposition of Jonathan Owens ("Owens Dep.") at 46:13-25, Ex. 1 to Plf.'s Resp.)  Plaintiff found the other driver in a parking lot, got out of his truck, and walked toward the other driver, who was also out of his car.  According to Plaintiff, the other driver walked toward him and hit him twice in the left side of his head near his temple.

Following the altercation, Plaintiff drove directly to the Hominy Police Department to report the other driver's conduct.  It was between 2:00-2:30 p.m. when Plaintiff arrived at the police station.  The only person present at the police station upon Plaintiff's arrival was Virginia Copple ("Copple"), the dispatcher.  Plaintiff related the incident to Copple and she called Goode, who was

---

to hold Goode liable in his individual capacity.  Otherwise, there would have been no reason for Goode to file a separate brief as the case would have turned on the existence of municipal liability alone.  *See Watson v. Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) ("A [§ 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same"); *Marino v. Mayger*, 118 Fed. Appx. 393, 405 (10th Cir. 2004) (claims against county and sheriffs in their official capacities construed as claims against county only).  Based on the briefing before the Court and construing the Petition in the light most favorable to Plaintiff, the Court concludes that Plaintiff has attempted to assert a constitutional violation against Goode in his individual capacity.

[2] Unless otherwise indicated, the facts set forth below are either undisputed or represent Plaintiff's version of events.  The Court has reviewed the entire record to determine if issues of fact exist, despite Plaintiff's failure to comply with the rules of this Court, which require the disputed facts to be numbered and to state the number of the movant's fact that is disputed. *See* LCvR 56.1(c).

the Chief of Police and also the on-duty officer that day, to the station.  When Goode arrived, Plaintiff reported the incident to him and filled out a report.  Plaintiff reported to Goode that he believed the man who assaulted him was Charles Crawford ("Crawford"), a former Chief of Police of Hominy.  Goode knew of Crawford, but had never met him personally.

       B.     <u>Plaintiff's September 3, 2001 Arrest for Public Intoxication</u>

During the course of Plaintiff's reporting of the incident, Goode determined that Plaintiff was intoxicated.  According to Goode, such determination was based on his observation of the following: (1) the odor of alcohol on Plaintiff's breath and person; (2) glazed and watery eyes; (3) slurred speech; and (4) his state of agitation.  After making these observations, Goode administered a "pen and eye test."  In addition, Goode asked Copple if she could smell alcohol on Plaintiff's breath, and she replied yes.  According to Copple's trial testimony, she had an opportunity to observe Plaintiff because she was only two or three feet away from him.   Copple also observed a strong odor of alcohol, reddish colored eyes, a little bit of slurred speech, and extreme agitation.

After Goode finished taking the necessary information from Plaintiff, he told Plaintiff that he believed Plaintiff had been drinking and would not allow him to drive from the premises. Plaintiff admits that it was possible he had an odor of alcohol, that he was agitated based on the prior assault, and that his eyes may have appeared bloodshot.  He denies being drunk and denies that he had any slurred speech.  Plaintiff alleges that Goode determined he was drunk at the instant Plaintiff announced that Crawford, a former police chief, was the other driver involved in the incident.

Due to his conclusion that Plaintiff was intoxicated and unable to drive, Goode asked Plaintiff if there was someone who could come pick him up and gave him the opportunity to make phone calls.  Goode told Plaintiff that his choice was for someone to pick him up or for him to be

arrested for public intoxication.  There is disputed testimony regarding whether Plaintiff made any calls, how many calls were made, and to whom, but Plaintiff claims he made unsuccessful attempts to locate a person who could pick him up.  However, Plaintiff admits he did not ask for additional time to continue making calls.  Once Goode determined that Plaintiff was not going to get picked up, Goode arrested Plaintiff for public intoxication at approximately 2:45 p.m.  Plaintiff was asked to remove the contents of his pockets and was placed in a cell, where he remained for approximately six hours until he was released on personal recognizance.  Throughout the elapsed time period, Plaintiff and Goode had no further encounters.  Prior to these events, Plaintiff had no prior dealings with Goode and did not know him.

        C.     <u>Issuance and Execution of  Warrant for Plaintiff's Arrest Based on Failures to Appear</u>

Upon his departure from the police station, Plaintiff was issued a citation and signed an Application for Personal Recognizance, both of which informed him of a court date set for October 11, 2001.  Within a few weeks, he retained attorney John Briggs ("Briggs") to represent him on the public intoxication charge.  Plaintiff claims that the October 11, 2001 hearing was continued at the request of his attorney while an attempt was made to "effect a settlement with [Municipal Judge Dean Daniel]."  (Plf.'s Resp. Br. at 2.)  Judge Daniel's docket sheet of October 11, 2001 states "will dismiss upon payment of fine and costs" and "cont 11-08-01."  (Ex. 3-J to Goode's Mot. for Summ. J.)  Apparently, the fines and costs were not paid, and Plaintiff failed to appear not only for the November 8, 2001 court date, but also for several subsequent dates set by the Court after continuing the matter.  On the final court date, February 14, 2002, Judge Daniel refused to pass the matter again.  On March 8, 2002, Judge Daniel issued a bench warrant for Plaintiff's arrest.  Plaintiff claims he did not have notice of any of court dates other than October 11, 2001 and that he believed the

matter was taken care of.  There is no evidence in the record regarding the responsibility of Briggs in this regard, although it appears there was a failure to communicate between Briggs and his client regarding these court dates.

Approximately seven months after the issuance of the warrant, on November 22, 2002 at 10:30 a.m., Officer Thomas Donnell ("Donnell") executed the arrest warrant at Plaintiff's residence. Plaintiff did not understand why he was being arrested and believed the public intoxication charge had already been taken care of.  Plaintiff admits he resisted "a little bit" because he was confused and he was being handcuffed, manhandled, and harassed.  Plaintiff was brought to the police station and was jailed until relatives came for him later that day.   Plaintiff believes Goode "was behind" execution of this warrant, although there is no evidence in the record except Plaintiff's testimony to support this conclusion.  (*See* Owens Dep. at 103:9-18.)  Goode testified that he had no involvement in the arrest, that he did not order the arrest, and that he did not know about the arrest until after it occurred.  (*See* Deposition of Mason Goode ("Goode Dep.") at 53, Ex. 4 to Goode's Mot. for Summ. J.)  Goode also testified that it was routine procedure for warrants to be executed several months after they are issued, at a time when an officer is not busy with other duties.  (*Id.* at 53, 56-57.)

D.     Trial and Appeal of Public Intoxication Charge

Rather than pay his fine, Plaintiff chose to go to trial on the charge.  On March 13, 2003, a trial was held in Hominy Municipal Court on the public intoxication charge.  There is no transcript of this proceeding in the record.  On March 21, 2003, Judge Daniel entered an order finding Plaintiff guilty of public intoxication, and Plaintiff appealed to the District Court of Osage County.  On June 21, 2004, a *de novo* trial was held in Osage County District Court.  Osage County District Judge J.R.

Pearman sustained Plaintiff's appeal and dismissed the charges.  Judge Pearman stated:

> This is the first time that I can recall I have done this for a long time, that I have had a chance to comment on this very situation that we have in this case.  I think Chief Goode was doing his job, I certainly do.  I think that in this particular situation that if there had been no alcohol smell that it would have been risky to turn this gentleman loose on the street.[3]  I can tell from him testifying that he still gets agitated when he talks about the situation and I don't blame him.  I mean, nobody here refutes that what he says happened that caused all of this to start.  His brother testifies that he's got a temper and I will guarantee you that that's absolutely an understatement. So when he has this incident on the street and the gets assaulted by someone and goes to the police station to try to get some help he doesn't get it the way he thinks it should be done then he's going to be upset and upset and more upset and more upset and that's exactly what happened.  But the mere smell of alcohol doesn't necessarily mean that the person is intoxicated, that's a legal word that the officers on the street . . . they have to make a judgement on a daily basis as to whether or not a person is intoxicated.  I can understand how Officer Goode would say smelling something,  beer, for instance, and the way this guy was acting that he was drunk, but I don't think he was.  I think there is a real good lesson to be learned here by Mr. Owens, not by Officer Goode, I think Officer Goode did everything he was supposed to do.  I think he did it right.  It's unfortunate that Mr. Owens overcame his good sense, any time an officer offers you a chance to walk or in this case ride with somebody else you better take it because it just gets worse and worse . . . . The best thing to do is put your hands in your pocket and do what he says and keep your mouth shut and do what he says.   And I hope this has been a lesson, Mr. Owens, I think that the city has failed to prove beyond a reasonable doubt that he was intoxicated . . . .

(Tr. of 6/21/04 Trial at 58-59, Ex. 2 to Goode's Mot. for Summ. J) (footnote added).)

E.      Investigation of Crawford

On September 24, 2001, after Plaintiff's initial release from jail, Plaintiff submitted two additional statements regarding the September 3, 2001 incident.  In these statements, Plaintiff identifies Crawford as his attacker and requests that the police take action on his report.  At some point in time after these additional statements submitted by Plaintiff, Goode and City Attorney John

---

[3]  The meaning of this statement is unclear to the Court, but it appears to be a transcription error.

Heskitt ("Heskitt") interviewed Crawford at the police station about the incident with Plaintiff. Crawford admitted to being the other driver and to striking Plaintiff but claimed that Plaintiff had approached him screaming and yelling and that he felt threatened.  Heskitt provided all information regarding the incident to the Osage County District Attorney.  The District Attorney's Office made the decision not to file charges against Crawford based on the September 3, 2001 incident.  There is no evidence that Goode played a role in the decision not to prosecute.

## II.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986).   Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir.1998).

## III.    Section 1983 Liability of Defendant Goode[4]

Section 1983 liability imposes liability for conduct carried out under the color of state law

---

[4] As explained in footnote 1, Goode and the City have filed separate motions for summary judgment.  Goode's motion raises the primary substantive arguments and contains the evidentiary record, and the City's motion incorporates all evidence presented by Goode and then asserts, as its first proposition, that the City cannot be liable because there were no constitutional violations committed by Goode. Thus, the Court will first address Goode's motion for summary judgment.

which deprives a plaintiff of a constitutional or statutory right.  42 U.S.C. § 1983.  To prevail on a

civil claim for damages for a constitutional violation pursuant to § 1983, a plaintiff must establish

that a defendant acted under color of state law and caused or contributed to the alleged constitutional

violation.  *Jenkins v. Wood*, 81 F.3d 988, 998 (10th Cir. 1996).

Plaintiff asserts that three types of constitutional violations occurred: (1) arrest without

probable cause; (2) deprivation of liberty and property without due process of law; and (3)

deprivation of the right to a speedy and fair trial.  (Compl. ¶ 23.)  Plaintiff is clear in his response

brief that "[w]hat is at issue here is not simply an unlawful arrest by Officer Goode, but the delay

in trial of the charge and the perfunctory and ineffective 'investigation' of Mr. Owens' complaint

of assault and battery against former police chief Crawford."  (Plf.'s Resp. at 8-9.)  All claims are

asserted against both Goode and the City.  The Court will address each in turn.

A.     Illegal Arrest - September 3, 2001

1.     *Statute of Limitations*

Goode first argues that he cannot be held liable under § 1983 for arrest without probable

cause because the statute of limitations has expired as to that claim.  A § 1983 action filed in federal

court in Oklahoma is governed by the two-year statute of limitations applicable to personal-injury

claims.  *Abbit v. Franklin*, 730 F.2d 661 (10th Cir. 1984).  The lawsuit was filed in this case on

August 27, 2004, more than two years after the arrest on September 3, 2001.  Plaintiff contends that

the date Judge Pearman overturned the conviction (June 21, 2004), and not the date of arrest

(September 3, 2001), is the trigger date for the statute of limitations based on the Supreme Court's

decision in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

In *Heck*, the Court held that for § 1983 liability claims challenging the validity of a

8

conviction or sentence, the cause of action does not accrue and the statute of limitations does not begin to run until the conviction or sentence has been invalidated.  *Id.* at 489-90; *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999).  However, with respect to § 1983 liability based on an illegal arrest, the Tenth Circuit has reiterated the general rule that such claims are presumed to have accrued when the unconstitutional actions actually occurred, and held that nothing in *Heck* changes the general rule.  *See Beck*, 195 F.3d at 558 ("*Heck* does not affect the time these claims [for illegal arrest and illegal search and seizure] arose because ultimate success on them would not necessarily question the validity of a conviction resulting from the [underlying charge].");  *see also Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000).  The court in *Beck*  noted one clear exception where *Heck* may apply to extend the accrual date of an illegal arrest claim - where the plaintiff was convicted of resisting arrest.  *Id.* at 558-59.  The court recognized another possible exception where all evidence supporting the conviction was obtained as a result of an illegal arrest.  *Id.* at 559 n.4.  The Court concludes that neither exception is present here, and that the statute of limitations began to run on the date of arrest.  Accordingly, the § 1983 claim based on illegal arrest is barred by the two-year statute of limitations.

2.     *Existence of Probable Cause*

Alternatively, the Court concludes that Plaintiff cannot succeed on this illegal arrest claim as a matter of law because the undisputed facts indicate that Goode had probable cause to arrest.  Probable cause exists to arrest if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee was committing an offense.  *See Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005).  Under Oklahoma law, probable cause has been found to exist for an arrest for

9

public intoxication where the suspect had blood shot eyes and the odor of alcohol on his breath, *Smith v. State*, 695 P.2d 1155 (Okla. Crim. App. 1986); where an officer detected a strong odor which he associated with alcoholic beverage and noticed that suspect's speech was slurred, *Staub v. State*, 526 P.2d 1155 (Okla. Crim. App. 1976); and where defendant's walk was unsteady, his speech was slurred, and his breath smelled strongly of alcohol, *Riddle v. State*, 506 P.2d 1405 (Okla. Crim. App. 1973). There is no requirement that an officer administer a breathalyzer or other formal test in order to support a finding of probable cause, in part because the "symptoms of intoxication are [] a matter of common knowledge and understanding." *Findlay v. City of Tulsa*, 561 P.2d 980, 984 (Okla. Crim. App. 1977).

Plaintiff does not dispute that he may have smelled like alcohol, that he was extremely agitated, that his eyes may have been bloodshot, and that he was given a "pen and eye" test. Goode and Copple testified that Plaintiff's breath smelled "strongly" of alcohol and that he was acting angry and agitated. Although the Court accepts as true Plaintiff's contention that Goode mistook signs of anger, excitement, and eagerness to have his claims heard as signs of drunkenness, the undisputed facts are that he did smell like alcohol, he was acting agitated, and his eyes may have been bloodshot. Further, although Plaintiff asserts that Goode decided he was drunk only upon mention of Crawford's name, there is no evidence in the record, other than Plaintiff's conclusory allegation, that Goode had any improper motivation for the arrest. There is no evidence that Goode and Crawford had any prior relationship or that they even knew each other. The mere fact that Goode had heard of Crawford and that he knew he was a former policeman, combined with Plaintiff's speculation, is insufficient to create a question of fact as to whether Goode was motivated to arrest by anything other than a desire to keep Plaintiff from driving home. This conclusion is

further supported by the fact that Plaintiff and Goode had no prior relationship or dealings. Thus, despite the ultimate determination by Judge Pearman that Plaintiff was not in fact intoxicated, the Court concludes that no genuine issues of material fact exist as to whether Goode had probable cause to make an arrest for public intoxication under the undisputed circumstances presented here.[5]

     B.    <u>Illegal Arrest - November 22, 2002</u>

Goode did not make this arrest, and there is no evidence in the record to indicate that he ordered or "was behind" its execution on Plaintiff, other than Plaintiff's unsupported and conclusory allegations. There is nothing about the timing of the execution of the warrant or any other circumstances that indicate anything except that the warrant was executed by Donnell as part of his routine duties of executing outstanding warrants. Thus, Plaintiff cannot establish that Goode "personally participated" in the alleged deprivation, which is a required element of a § 1983 claim against an officer. *See Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) ("In order to be liable pursuant to § 1983, a defendant must have personally participated in the alleged deprivation.").

     C.    <u>Due Process Violation</u>

It is unclear from Plaintiff's record exactly what he alleges as a due process violation. It appears that such claim is based on "the delay in trial of the charge and the perfunctory and ineffective 'investigation' of Mr. Owens' complaint of assault and battery against former police

---

[5] Goode also argues that the municipal court conviction by Judge Daniel conclusively established the existence of probable cause, citing an unpublished decision. *See Sanders v. Howlett*, No. 93-3393, 1995 WL 143460 at * 2 (10th Cir. March 30, 1995). Although the holding in this case could possibly extend to the circumstances here, the case is unpublished and applies Kansas law. Therefore, the Court does not rely on Judge Daniel's ruling as conclusive on the issue of probable cause. The Court rejects Goode's argument that Judge Pearman's comments regarding Goode acting appropriately under the circumstances are in any way binding on this Court's summary judgment determination on the issue of probable cause.

chief Crawford."[6]  (Plf.'s Resp. Br. at 8-9.)  Plaintiff cites no case law to the Court in support of these arguments and offers the Court no citations to record evidence related to this specific aspect of his constitutional claim.

First, with respect to any general due process violation allegedly committed by Goode, the Court concludes that Plaintiff received extensive process related to his public intoxication charge, including a citation, several court dates in front of Judge Daniel, a trial in front of Judge Daniel, and a second trial in front of Judge Pearman on appeal.  Plaintiff, in fact, successfully vindicated his rights and had all charges against him dismissed as a result of the process he received.

Second, with respect to some type of "due process" violation based on Goode's failure to quickly or effectively investigate Plaintiff's complaint against Crawford, Plaintiff has failed to cite any authority for the proposition that a police officer's failure to promptly investigate a victim's claim can result in a deprivation of the victim's "due process" rights.  Even assuming such right exists, there is evidence in the record that the claim was in fact investigated.  Goode and City Attorney Heskitt interviewed Crawford and turned over all facts obtained in the investigation to the Osage County District Attorney's Office, which made the ultimate decision not to file charges against Crawford.  Other than Plaintiff's unsupported and conclusory speculation, there is simply no evidence in the record to suggest or even infer that Plaintiff's claim against Crawford was buried or ignored by Goode based on Crawford's former position as the Chief of Police.  Further, the decision not to file charges simply cannot form the basis of constitutional violation because there is no evidence that Goode participated in such decision.  *See Durre v. Dempsey*, 869 F.2d 543, 548

---

[6] The Court will address the "delay in trial" arguments as part of Plaintiff's claim related to deprivation of his right to a speedy trial.

(10th Cir. 1989) ("In order to be liable pursuant to § 1983, a defendant must have personally participated in the alleged deprivation.").

        D.    <u>Speedy Trial Violation</u>

As to any delays in proceeding to trial, any initial delays were caused by Plaintiff's failures to appear for his court dates, which resulted in the bench warrant for his arrest.  After his arrest on September 3, 2001, a court date was promptly set for October 11, 2001.  Plaintiff does not dispute receiving a citation and Application for Personal Recognizance upon his release from jail, both of which apprised him of this October 11, 2001 court date.  Plaintiff then retained an attorney.  Plaintiff claims that the first hearing was continued at the request of his attorney while an attempt was made to "effect a settlement with [Judge Daniel]."  (Plf.'s Resp. Br. at 2.)  While Plaintiff claims he did not receive notice of any subsequent hearings, it is undisputed that he retained an attorney to handle his public intoxication charge.  It was his responsibility and that of his attorney to appear at any scheduled court dates when the settlement of the charge was not effectuated.  There can be no question that the delay from the time of the arrest in September 2001 and the time of issuance of the warrant by Judge Daniel in March 2002 was caused by Plaintiff's failures to appear.

The only testimony in the record regarding subsequent time that elapsed between March 2002 and execution of the warrant on November 22, 2002 is that of Goode, who stated that it is not unusual for warrants to remain on the books for lengthy periods of time.  He explained: "[W]e don't normally go out and just - as soon as warrants are issued try to serve them.  We're not even told when they're issued.  They're just kind of put in the book, and as we have time, we go out, and if I have a slow week, I'll pick up the warrant book and see if I can try to serve some warrants . . . ."  (Goode Dep. at 57.)  Plaintiff has cited no law, and the Court has no reason to believe, that a nine-

13

month delay in the service of an arrest warrant on a public intoxication charge presents an unusual circumstance.  Plaintiff has certainly not presented sufficient law or evidence that such a delay results in any type of  constitutional violation.

      E.      <u>Malicious Prosecution</u>

It is unclear whether Plaintiff asserts malicious prosecution as an underlying theory of liability of his § 1983 claim.  Because Goode has addressed the argument in his motion for summary judgment, the Court will do so also.  The Tenth Circuit has held that a malicious prosecution claim is actionable under § 1983 as a violation of a plaintiff's Fourth Amendment right to be free from unreasonable seizures.  *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996).  The common law elements of a malicious prosecution claim under state law provide a "starting point for the analysis," but the court must always decide "the ultimate question" of whether the plaintiff has also proven a constitutional violation.  *Id.*

Under Oklahoma law, the plaintiff in a malicious prosecution action has the burden of affirmatively proving five elements: (1) the bringing of the original action by the defendant; (2) its successful termination in plaintiff's favor; (3) want of probable cause to join the plaintiff; (4) malice; and (5) damages.  *Young v. First State Bank, Watonga*, 628 P.2d 707, 709 (Okla. 1981).  "Malicious prosecution actions are not favored by the court, and they should not be encouraged by lax rules favoring them."  *Id.*

The Court has concluded that Plaintiff has not created a question of fact as to the issue of whether Goode had probable cause to make the September 3, 2001 arrest.  The Court also concludes that Plaintiff has not created a question of fact as to the element of malice.  Plaintiff and Goode had no relationship or dealings prior to his arrest.  Goode believed Plaintiff exhibited some classic signs

of intoxication and did not want him to drive home.  It is undisputed that Goode allowed Plaintiff the opportunity to have someone pick him up and would not have arrested him if someone had been able to pick him up.  The undisputed facts simply do not give rise to even an inference of malice by Goode in making the decision to arrest and charge him with public intoxication.

## III.      Section 1983 Liability of the City

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.1998) (citations omitted). If no underlying constitutional violation by a municipal employee exists, the claims against the municipality must be dismissed.  *Id.*  For the reasons explained above, Plaintiff has failed to show that Goode or any other municipal employee committed a constitutional violation.[7]  Plaintiff has also failed to present any evidence whatsoever to establish that the City had a policy that was the moving force behind any of the alleged constitutional violations.  Accordingly, Plaintiff has failed to meet its burden as to either element of its claims against the City.

## IV.      State Tort Liability of the City and Officer Goode

It is undisputed that Plaintiff failed to file any notice of the three tort claims asserted in this case, as required by the Oklahoma Governmental Tort Claims Act.  Because such notice was not filed, Plaintiff's state-law claims against both Defendants are barred.  *See* OKLA. STAT. tit. 51, §

---

[7]  If and to the extent Plaintiff attempts to allege any excessive force or other constitutional violation committed by Donnell in connection with the November 22, 2002 arrest of Plaintiff (*see* Plf.'s Resp. Br. at 3), the Court finds that Plaintiff has not made a showing that use of such force was the custom or policy of the City and that the City cannot be liable for any such claim.

156(B).  In addition, Officer Goode enjoys immunity from suit because all alleged conduct occurred within the scope of his employment.  *See id.* at § 163(C).  Plaintiff raised no arguments in his response brief related to the state tort claims.

It is therefore ORDERED that Motion for Summary Judgment of Defendant City of Hominy (Docket No. 23) is GRANTED as to all claims and Motion for Summary Judgment of Defendant Mason Goode (Docket No. 25) is GRANTED as to all claims.

**ORDERED this 10th day of APRIL, 2006.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

16